I want to welcome everyone to the early morning session of the Fourth Circuit this morning. Good to have you with us. We've got three interesting cases and good lawyers. We look forward to the argument. In the first case, Cincinnati Insurance Company v. Levi Owens. Mr. Parker, it looks like you're up first. Good to have you with us. Thank you, Your Honor. May it please the court. My name is Jay Parker, and I'm here with my co-counsel, Mr. Jason Luck. And we're honored to be here representing Mr. Levi Owens, who is the personal representative of Christopher McLean, who's his deceased son. I'm not going to go through the facts. I think it's more important, actually, to give you all an update really quickly on something you can take judicial notice of, which is the state of the underlying state court proceedings and where that is. A big part of our arguments concerning why the federal D.J. action should have been stayed by the district court has to do with the nature of the underlying proceedings. The district court found in its order granting summary judgment that there was a valid and enforceable default judgment that had materially prejudiced Cincinnati Insurance Company and prevented them, or precluded them, really, from defending the underlying tort claim. Well, now, when this appeal, when the notice of appeal was filed, there was a pending motion to vacate that default judgment. The special referee denied that motion, and since then, Mr. Wainhunt, who's a defendant in this appeal, but is not a party to this appeal, and is the defendant in the underlying tort action, he has since appealed that order, denying his motion to vacate the default judgment. So what that means- Now, what state are you in now? North Carolina? South Carolina, Your Honor. I mean, but you're talking about the South Carolina case. Yes, Your Honor. It's a North Carolina insurance policy, but the tort action occurred in South Carolina. I understand, but you're not talking about the federal case. Okay, I got you. You're talking about- No, Your Honor, I'm talking about the state court proceedings for the default judgment for the tort action. Yeah. I'm sorry about that, Your Honor. That's where the- It's very confusing. That's where the special master was. Yes, Your Honor, special referee, we call them in South Carolina. But so, right now what we have is we have a default judgment in the tort case regarding the death of the seated in our case that is there, but it's reversible, okay? It's a valid and enforceable judgment. So what happens if it's reversed? I mean, the statute of limitations is run. I mean, what are you going to do about that? If it is reversed in the South Carolina Court of Appeals? Well, there are several different ways that that could happen, really, if we're talking about it. Because what we had was in South Carolina state court, a motion to vacate a default judgment. That can be granted for several reasons. One, it could be a service issue, which there is an underlying service issue in this case. But two, they could find excusable neglect for not defending and answering. There's just a lot of procedural stuff here. You didn't try this case from the beginning, and I mean, there's a problem with the case, and the problem ought to be resolved in a different way than where we are right now. Who in the world just sues the driver of a vehicle? He doesn't even own, rent, lease by an employer. It's a truck. I know that personal injury lawyers go after those kind of cases, wrongful death cases, truck type. I mean, who would not go in and find out who owns the truck and the insurance policy? Well, I think there's two very good questions in there, and I'll get, I think- I'd like to hear the two very good reasons. I'll give, I'll try to. So, the back end of your question, why was this done the way it was? Mr. Luck and I actually were not counsel in this case. Well, I'm not putting it on you. I know you weren't counsel, and I'm just saying, what is it? That was a pretty seasoned personal injury firm, and they didn't do little cases. From what I recall, I don't figure it out. I can't figure that out, unless you figured because he was a permissive driver, then the M90 would cover him or whatever. I don't know. Well, so this is what we think happened when we look at it, and it's the reason why the MCS-90 endorsement exists. The policy reasons behind that exist in the first place, because the trucking industry was abusing the use of borrowed, leased vehicles to hide from financial responsibility. And so, in this case, when we look at the collision report, what does it say? It says Wayne Hunt was the driver. It gives his address, and it lists the owner of the vehicle as Penske Trucking. And so, and I can't answer- I'm sorry, Your Honor. Burlington Trucking Company. That's correct, Your Honor. Nobody bothered to check on that. Again, from what I know from the record, I can't answer that because I wasn't counsel. That's a pretty simple question. You know Penske is the one that leases. Who wouldn't go and get the lease contract and look at it? Your Honor, I wasn't counsel of record early on. But you're the only one we have here. That's right, Your Honor. That's not a good explanation. You're the lawyer that's here. But I think that that's what we're here for is the motion to stay and the entanglement that comes with the underlying state court case. Right now, we're answering questions that are relevant to the state court proceedings in front of the South Carolina Court of Appeals. I mean, because it all comes down to the fact that you only sued Hunt. You don't have a judgment against WSC. And that's what the whole problem is. Nobody told this insurance company. This has been 10-something years ago. And they didn't know it. They got a $5 million default judgment. See, it almost looks like it's strategic. You go get a judgment against a driver for a default judgment of $5 million. You haven't told anybody else whatsoever. Driver obviously doesn't have $5 million. Who in the world would do that? Where do you think you'll get the money from? I bet you can't get it for that driver because if you did, you wouldn't be standing in here now. Is that right? You can't get $5 million from the driver, can you? Your Honor, we are seeking supplemental. We are engaged in supplemental proceedings in state court right now. I understand what we're engaged in, but I'm getting to the heart of it. You can go in terms of the legal arguments, but the problem with this case is the worrying in it. And the fact that you only sued Hunt. You can argue all day long in terms of, well, the M90s should do this or whatever. The case law is against you on that point. You can argue the other points in it. But the bottom line in the case that you are facing now, even procedurally, is that you don't have a judgment against WSC insurers within. And when you look at it, I mean, give you an oral argument in terms of it, but don't think you won't answer questions regarding how this all came about from the beginning because there's no such thing as, I'm only going to talk about the law and I'm not going to talk about the rest of it. Well, Your Honor, I think that I appreciate that. And I agree with that. That is important. It is a question that I wish that I could give answers for how this was filed and why that wasn't done. But that is why we're in the procedural stance where I am right now, where I do have to pivot to the law. You didn't sue WSC because everybody was in a hurry and the statute was about to run? I would have to speculate and I would have to speculate about that, Your Honor. You've certainly done some work on the case here. I'm in a unique position where the attorney who originally had this case, there's absolutely no way I can communicate with him and learn why he did what he did. All I can say is how I've handled it coming into it. And again, which goes to the MCS 90 endorsement and Your Honor, your words about futility and whether we should have been allowed to amend our answer and add a counterclaim asking for a declaration that there is a surety ship here. Has there been a legal battle for practice action brought in this matter? I'm not aware of one, Your Honor. Looks like something ought to be brought. I'm not saying it should be, but I don't believe you'd file a case look like this, would you? I just don't think the reason it becomes important is because we like to have some precedent. But I haven't seen a case where the plaintiff's lawyer just sued a driver and didn't who was not the owner of the vehicle leased by someone else, insurance companies insuring that person who leased it from Penske, but only the driver. And nobody seems to even look to try to connect or notify anybody else in the case. Is there a case like that? I've not seen one like that, Your Honor. But I don't know, again, how this did happen with this getting filed. Regardless of how it happened, I'm saying we're looking for precedent, looking for some guidance of who is seeing a case like this. I can say that these facts are truly unique. I wish that I could have found the facts. I look for one. There's nothing that we can talk about. That's not what you do. Did they know about the insurance coverage when they brought the lawsuit? I'm sorry, could you repeat that? What did they know about the insurance coverage when they brought the lawsuit? The understanding, I believe, when the lawsuit was brought was that coverage was going to come from Penske. Coverage was going to come from Penske. That's what they thought that brought the suit. Again, I'm speculating that that's where... Have you done an investigation about this? Well, our state court proceedings are still ongoing, and that's, again, why I... You're trying to bring us up to date on the state court proceedings, and we've interrupted you. You haven't finished that yet. That's right, because the state court could turn around and say there is no... They could vacate... What's going on in what state court? In South Carolina Court of Appeals. The South Carolina Court of Appeals has an appeal of somewhat... An appeal by Mr. Wainhunt to vacate, to reverse the special...  That is correct, Your Honor. That's the driver. That's correct, Your Honor. Okay. And it's to vacate... And he's provided with attorney by Cincinnati Insurance. That's correct, Your Honor. Under a reservation of rights. That's correct. So they're taking care of Hunt at this point. That is correct. And so they're taking an appeal to the South Carolina Court of Appeals. That's right. On what kind of an issue? Whether or not the default judgment should be vacated. Whether the default judgment should be vacated. And so, and you're thinking that that has some bearing on the coverage dispute in the federal court. Yes, Your Honor. That's absolutely... That's why you're telling us this. That's why I'm trying to. I've been trying to. Well, there are prejudices. I've been trying to get us back to this. The material, if you look at the district court's order, the material prejudice that the district court used to justify saying no coverage, no defense, is that they were, is that Cincinnati was unable to defend the underlying tort action. If South Carolina Court of Appeals, a year from now, says we are vacating that default judgment, the whole basis for the district court's order is now the feet are taken. The card of the House of Cards is taken away. And the House of Cards will fall. And now that turns this into a trust guard issue. Where now what the district court has done is it's issued... Why is it a trust guard issue? There's a final judgment, right? Final but reversible. They were notified of their obligation to defend. So that's out. And I mean, there might be a split of authority on duty to indemnify. But everybody agrees that once there's a judgment, there's a duty to indemnify is triggered. And so, I mean, South Carolina law says there's a final judgment when the amount of the money is, you know, entered. When the judgment is entered. We don't have to wait for a motion to vacate and the appeal of a motion to vacate and maybe cert on the denial of appeal to motion to vacate, right? There's a final judgment. There is a final judgment, Your Honor. But when we're talking about final in that sense, we're meaning final in the sense of appealability. Where does that come from? The rules of civil procedure. Like where do we say that there's no duty to indemnify but you can't proceed with this sort of DJ action until all appeals have been exhausted? That's not. You can receive a declaration that you don't have a duty to defend before all appeals have been exhausted. But that's in cases where you're holding up the four corners of the tort complaint and comparing it to coverage. You don't have a duty to pay. You don't have a duty to indemnify. You get that with final judgment at a minimum. Sure. But in this case, the duty to defend is directly tied into the default judgment. Because if you carefully read the district court's order, it doesn't say some other reason for saying you don't have a duty to defend. It's all tied into being materially prejudiced by a default judgment. The thing is, is that if the South Carolina Court of Appeals vacates that default judgment, the whole premise of the district court's reasoning is now gone. Because the district court said there is a default judgment that is prejudiced Cincinnati. If there is a reason why the South Carolina Court of Appeals vacates the default judgment, but service is still good, there is an ongoing South Carolina case. Well, the question is whether the duty is triggered and then whether they're prejudiced. I mean, you're trying to put it all on prejudice. Well, the duty was triggered when they received notice of the lawsuit. But then the question is, can they now say that the cooperation clause has been violated in a way that's material to them that allows them to disclaim defense or coverage? And that all, again, flows from the default judgment. Well, they're saying they didn't have an opportunity to investigate and defend, that they weren't told of the lawsuit. Well, again, the district court in its order doesn't make any findings about that. But the witnesses, Mr. Hunt's still alive. Ms. Jacobs, who was driving the vehicle, is still alive. There's no evidence of an accident scene. That place has been altered. There's a collision report. There's the investigating officer. There's a lot of places, ways that this could still be defended by Cincinnati if the default judgment is vacated by the... I'm sorry, I've gone over our time. You answer questions as long as you get them. Okay, thank you. If they ask questions, you can finish your answer. And if you get other questions, you've got to answer those as well. I didn't, Paul. I didn't ask when the time ran out, so I was just apologizing for that. I'm sorry. But the thing is, is that this default judgment could be vacated by the court of appeals. And if that happens, how has Cincinnati been materially prejudiced by a default judgment that no longer exists? Well, that's not before us. But that's why the district court, that was its reasoning in issuing its order on summary judgment. What do you want us to do? What's your bottom line? I think the bottom line is that due to these issues of efficiency and entanglement and the potential for the order to turn into an advisory opinion that's totally premised on something that no longer exists, I think these orders have to be vacated at minimum and returned to the district court with instructions for our motion to stay, to stay the action and let these South Carolina court proceedings play out. Or in the alternative, to dismiss, you know, without prejudice for them to refile the D.J. action once these issues with the default judgment have been sorted out. You've made a bunch of requests there. What do you want us to do? Vacate the orders. If y'all have any more questions, I'll reserve the time for co-counsel. Thank you. Okay. Mr. Atkinson? Good to have you with us, sir. It's good to be here. Thank you, Your Honor. May it please the court. My name is Dan Atkinson and I'm here on behalf of Cincinnati Insurance Company's appellee. I think the first thing and most important thing was already acknowledged by Judge Rushing in the earlier argument is we are here on a final judgment. Cincinnati filed the declaratory judgment action after there was a final judgment entered for default judgment. You're here on a summary judgment, correct? That's correct, Your Honor. That's what was entered by the district court and that's an appealable judgment. That's correct. So we have appellate jurisdiction. You do. I do not dispute that, Your Honor. And what I was trying to clarify is the declaratory judgment action filed in the district court initially in North Carolina, transferred to South Carolina, was filed when there was a final judgment entered against Wayne Hunt in the circuit court for Marlboro County, South Carolina. The motion filed was a rule... That's the original lawsuit. Yes, Your Honor. For ease, I may call it the wrongful death suit if that's okay with the court. The wrongful death case. Yes, Your Honor. That's the state court case. Correct. So the wrongful death action, there was a default judgment entered. There is a Rule 60 motion pending, but Rule 60 under the rules of civil procedure of South Carolina is nearly identical to the federal rule in that it is an appeal of a final judgment. There is a final judgment as noted in the briefing. Mr. Owen's counsel has moved to collect on the judgment. So that's an acknowledgement that it's a final judgment. You don't file a writ of execution unless you have a final judgment. This doesn't go on and on forever. Cincinnati is entitled to findings as to its obligations. Notably, I think the nautilus factors are not applicable when there's a final judgment. There's not intertwining of cases if there's already a final judgment in the case. That judgment is against the driver named Hunt. That's correct. It doesn't involve his employer. That's correct. And his employer was the specific insured, the company that bought the insurance policy. That's correct, Your Honor. And paid you the premiums for it. That's correct. But Mr. Hunt is an insured under that policy. Correct. As an employee, the name insurance. Insured under that policy. He is covered under the policy. He is not a named insured under the policy. He's an insured under the policy. I've read the policy. It says insured and it says who's insured. That's correct. But it doesn't name any of them. But anyway. Yes, Your Honor. We've talked about names insured and permissive insured. I didn't see those terms in there. But he's an insured because he's working for Wilmington, driving that truck. They had the accident. And this young man, 19-year-old man, a passenger in the other car was killed.  So we have a lawsuit. Yes, Your Honor. And you all say you didn't know anything about it. That's correct, Your Honor. Nobody ever told you anything about it. That's correct, Your Honor. What you say, though, when you read it, is you didn't know anything about the lawsuit. That's correct, Your Honor. You never say that you didn't know of the accident. Correct, Your Honor. And so the record doesn't reveal when and if Cincinnati insurance had knowledge, actual knowledge, of the accident and the death of this young man. And that the insured Mr. Hunt was the driver of the truck that killed him from the other vehicle. Your Honor, if I may elaborate on the facts. I'm not sure these are in the record. There's nothing in here about actual knowledge.  So, Your Honor. Was there never any discovery made? I think, right? Correct, correct. Not correct, Your Honor. Cincinnati did serve some discovery in the declaratory judgment. Yes, Your Honor. If I may fill in, part of the reason that there was not knowledge of the suit is if there had been defense of the suit, and I'm typically a defense attorney, this was the driver of Mr. Owens' turn left from a stop sign in front of the truck. It's likely a no liability case. And so that's why... The driver of Mr. Owens. Mr. Owens' vehicle. That's the other... The decedent. And she brought a lawsuit. She did. Which Cincinnati defended. Your Honor... And settled. There was a default judgment there as well, Your Honor. Well, it was settled. Yes, Your Honor. That's the only thing I saw on this record. That's correct. Is that the lawsuit by the other driver was settled by Cincinnati Insurance. That's correct, Your Honor. That's wrong. You didn't correct it. But it's in their brief, in a footnote. That's correct. Early on in the brief. The lady that was driving the vehicle in which the young man was killed. Correct, Your Honor. Can I ask you a question about insured under MCS 90? Yes, ma'am. It's... My understanding is that the parties are drawing a distinction between what insured means in that form and whether insured refers to a federal, a uniform federal definition or whether insured means who is insured. How is that defined in the policy? And I understand your argument to be insured means named insured, not however it's defined in the policy. And I wanted to ask about 49 CFR section 387.5. Yes, Your Honor. Right? So the form is in this subpart of the federal regulations. Correct. And a couple sections above in the same subpart, there's a definitional section.  Right? Point five. And point five defines, says for purposes of this subpart, insured means the motor carrier named in the policy of insurance. So it means named insured for purposes of this subpart. That's correct. And then within the subpart are the forms or they used to be. Now it's a hyperlink to the forms. Yes, Your Honor. They used to have the forms themselves in there and they use the word insured. And we then use the definitions to understand that means named insured.  Right? Yes, Your Honor. And that's the reasoning that explains why for all of these uniform policies, insured means named insured. Correct, Your Honor. And the forecourt case, which was cited both by the trial court and our briefing goes into that in depth, which was a Maryland district court case dealing with that specific regulation, as well as the Federal Motor Safety Carrier Administration's guidance regarding that.  There's been guidance in 2005.  Yeah. From the agency about that based, I think, based on this regulatory language. That's correct. It is interpreting that regulation as to who is the insured. And it is the named entity under that guidance. And the forecourt case dealt with a driver who was an independent contractor for a trucking company in a lawsuit in Maryland where you had actually contradictory findings in two lawsuits as to whether he was or was not an employee of the trucking company. And the Maryland district court said that doesn't matter because the MCS 90 provisions only go to the named entity that is insured, the trucking company. When, following up on Judge King's questions, when do you say you received notice of this? Notice was received. I was retained about 15 days before filing the declaratory judgment action. That is when notice of the lawsuit was issued. When did you say the insurance company? That Cincinnati hired me right after receiving them. And the action brought by the lady who was in the car that was settled, when did you learn of that? That was part of this declaratory judgment action as well, initially, Your Honor. So this was a truck that Penske had leased to your insured? That is my understanding, yes. Was there damage to the truck? There was. Who paid that? It is not in the record. I believe the insurer for the driver of Mr. Owens' vehicle did. Say again? The driver of the vehicle in which Mr. Owens was a passenger. I'm going from memory. It's not in the record. My memory is. Damage to the truck. Correct. The Penske truck. Correct. Not the insurer for WSC. And I'm telling you that's from memory, so I don't want to say that. It doesn't follow because normally when you rent a vehicle, at least in North Carolina, in most states, you don't have to buy the insurance. That's correct. Because if you have insurance, it's going to cover it. That's correct. And the insurance that was covering this vehicle is your insurer. That's correct, Your Honor. And so when I say the driver. It seems if the vehicle is damaged, in order for them to get it from, I guess, the injured party's insurer here, it would have to show some liability. But the easiest thing to do is to go and get it under the comprehensive section or whatever. Section of the entity that leased the vehicle. Understood. And then Cincinnati would have a subrogation claim against them. But you are certain Cincinnati did not pay that claim? I am not 100% certain because it's not the initiative of the staff. Do you see why that might be relevant? I do see why it might be relevant. If they paid a claim for a damaged truck, they know there's an injury. Who would pay a claim for a damaged truck and not find out what's going on? Because I would imagine the damage to a truck of that size would be substantial. Again, Your Honor, I think the important issue here, there's no denial that they knew that the accident occurred. Cincinnati knew that the accident occurred. When did they know the accident occurred? Around the time of the accident, Your Honor. But the issue was the accident on its initial assessment was at fault of Ms. Jacobs. Did they go out and try to settle it? They did not. Back when I practiced law for a little while, and I remember being in a lawsuit one time where I represented the state bar that had been sued by an insurance company that didn't want that the state bar had declared was engaged in unlawful practice of law by trying to settle lawsuits early on. Understood. They did find out about the wrecks. They'd go out and settle and tell people they didn't need a lawyer. And get them settled. And our unlawful practice committee ruled that that was the unlawful practice of law in the state. And the insurance companies monitored the accidents. Sure. To try to find out what was going on in order to be able to do that. Get things taken care of early and tell people they were helping them out. Uh, and there was a question of whether that was unlawful practice of law or not. And I couldn't imagine this 19-year-old boy getting killed with $5 million of insurance on the driver of the truck. And these trucks get a lot of these wrongful death cases, it seems like. Uh, and the insurer of the truck, the owner of the truck, the driver of the truck, is Wilmington Shipping. There's $5 million of insurance. And I could not imagine that Cincinnati Insurance didn't know about that almost immediately. Although here, you say you didn't get notice. And I thought it was very carefully drawn, these affidavits, because you always say, didn't get notice of the lawsuit. Never said we didn't know of the accident. And when you knew of the accident, you're a client, you knew there was potential liability. That's when you, as I'm playing back in my experience, that's when they'd get out there and try to set it. Your Honor. Now, I'm drawing on some personal experience, and I've taken some of your time, and I'll make sure you get the extra time back. But I just wonder why this record doesn't reveal when you, you being your client. Yes, Your Honor. Had actual knowledge of this accident, and the fact that their insurer could, was innocent. Your Honor. It wasn't Penske. Penske was not your insurer. Correct. But the Wilmington outfit, Wilmington Shipping, had leased that truck from Wilmington, and Hunt was driving for Wilmington. Yes. And this young man was killed, and he's the passenger in the other vehicle. Your Honor, what I would tell you is there was investigation fairly, I don't know the exact date, I don't know the exact date. And that's got to be the biggest claim in the case, the young man getting killed. Yes, Your Honor. In that situation. And what I would tell you is Cincinnati did an initial investigation, and said this is not a liability situation, because the other driver pulled out from a stop sign. Well, you're talking about what the facts are. You're arguing about the facts, but the special master said there's $5 million in damages. The special master has ruled in the state court $5 million in damages, which happens to be, coincidentally, the amount of the insurance. Isn't that surprising, Your Honor? So he must have known what the insurance was. So who the insurer was and those policies must have been well known to everybody. And Cincinnati Insurance said we didn't know of anything, nobody ever told us anything. Your Honor, let me be clear, because I don't want to confuse the record, Your Honor. The policy has two notice provisions. One is of an accident. We don't contend, we've never contended in this case that notice of the accident was not given. The second is notice of a lawsuit, Your Honor. And notice of a lawsuit was never given. I will tell you there was an investigation done at the time. If Cincinnati thought it had significant liability, it would have retained counsel. But the prejudice is not the lawsuit. Prejudice, I would think, is the default judgment. That's correct, Your Honor. And so the question there is, did you seek to set aside default judgment? Yes. And you were denied that? Correct, Your Honor. And let me be clear. Cincinnati split defense and coverage as is required. So if the default judgment had been set aside, then it's a different case. It is not, Your Honor. Under the Great American case, North Carolina State Court. But if you saw that, if you went in and says, well, we've been prejudiced because of this default judgment, and the state court then sets it aside for you. Yes, Your Honor. Then it's a different case. Your Honor, it is a different case factually. But the prejudice analysis under the Great American line of cases. So you think you still would be prejudiced if the state court had granted you that relief that you asked for? Your Honor, I believe Cincinnati still would have a defense to coverage if it had obtained that. Why would you ask for it? I mean, why would you ask for it and set aside it? If you're going to be prejudiced anyway, one way or the other, I mean, just go in and say, we're not paying because we didn't get notice. Because it's doing it under a reservation of rights. Letter issued stating, we will seek relief from the default judgment. But even if it's granted, we do not believe we have coverage obligations. And we are filing a declaratory judgment action in this regard. I wrote that letter, Your Honor. So I'm well aware of what that one says. So you're in both lawsuits? No. Defense and coverage is split. I'm coverage. There's different counsel handling defense, Your Honor. What happens if the appeal court does set it aside? Then the judgment's no good because there's not good service. And the statute of limitations ran in 2016, I believe, Your Honor. So it doesn't mean, if you set aside the default judgment, it doesn't mean the original complaint is still in place. And you just go, it proceeds on now to trial. Because, I mean, nothing, if you set it aside, then you got the original action, don't you? So, Your Honor, the basis to set aside default, at least my understanding of the pleadings, is that service was bad. Under rule, I believe it's three. I don't have it in front of me. The South Carolina Rules of Civil Procedure. The issue on appeal is the service of process issue. That is my understanding. Again, I'm not appeals counsel. Well, you're their lawyer here that's got to answer the questions. Well, I'm not representing. We're entitled to know. The service of process issue is on appeal in the Court of Appeals of South Carolina. That is my understanding. I was aware that the judgment was denied. You're saying you're telling us you don't know. I have not seen the Court of Appeals filings, Your Honor. I'll be honest. I have not seen those. Again, I'm not defense counsel. That was not communicated to me. But the issue, I know that the issue in the underlying motion to set aside default was service of process. Well, you know, the South Carolina Supreme Court of Appeals could decide to set it aside. It says, well, the reason we're setting it aside is because we didn't include, you need to include the insurance company on this. If it says something like that, you got a different case, don't you? Your Honor, that's not a basis under Rule 60 to set aside a motion for default judgment under South Carolina law. It has to be fraud, mistake, error of law. I think you're right. If it's on service, I don't know how you get over the statute of limitations. Maybe the other side can tell me on that. I brought that up. You guys brought a heck of a piece of litigation up here with a lot of issues I've never seen before. On a $5 billion case, it makes no sense to me. So, Your Honor, I agree with you on that issue. I believe that there are two options with what happens on the underlying case. Either default is set aside and there's no case remaining because service was not completed within 120 days of the statute of limitations running. So the South Carolina, the wrongful death litigation is incomplete. I disagree with that, Your Honor. Well, it's on appeal in South Carolina. It's on appeal of a final. It's on appeal of a Rule 60 motion, not a Rule 60 motion to change. It's on appeal in South Carolina.   But you're saying it's what's that appeals frivolous or something? No, Your Honor. That's the reason it's incomplete. You're saying it is complete. Your Honor, the reason. You're saying the wrongful death case that you called the wrongful death case. Yes. Is complete. Yes. And this is the reason, Your Honor, is what is on appeal is a Rule 60 ruling, which is a motion to modify a final judgment. It is not an appeal of the judgment. It's an appeal of a motion to modify the final judgment. What I would say further indicates that it was a final. I thought you said it was on appeal with respect to the service of process. That's the basis under. Well, if there's no service process, there wouldn't be anything. The suit would be time barred, Your Honor. Well, that's what I. Yeah. Yes. It's so it's not complete. It's back to my question. The wrongful death case. Your Honor. If it's still pending in the Court of Appeals of South Carolina, according to both the lawyers, that's one thing y'all agree on here. Well, let me pose it this way. There was a final judgment order entered in South Carolina. Well, there was a final judgment order entered in this case. That's why it's on appeal here today. But here's the critical distinction between that case and this case. That final judgment was not appealed within 30 days of the entry of the judgment. A motion under Rule 60 was made just short of a year after entry of the judgment, which is, as you know, the deadline for a Rule 60 motion, to set aside a final judgment due to apparent failure of service of process. Cincinnati takes no position on whether the service of process was good or not. Cincinnati says there's no coverage either way. If service of process was not good, then there is no judgment. Because there's no jurisdiction over the defendant, there's no judgment, the statute of limitations is expired. I hope some law students are listening closely to this, because it sounds like a bar question to me this case presents. But Mr. Hunt is on the hook for $5 million. He was sued, is that correct? He was sued. And he's in default in this case. Has he brought an action against his employer? I mean, he's in an employed status. I guess he's in the scope of his employment, the whole bit. Seems like to me, he'd bring an action. He's got $5 million to pay. Whether he can pay it or not is another question. But he's got a judgment, $5 million. And he's working for someone who has insurance. And there could be no way Wilmington didn't know of the accident or probably of the suit. I mean, you would follow it up. I mean, I don't know what's going on. I know that's an outside question. But it's still, it begs what is going on in this case. Because there's a $5 million judgment. And this is against Owens for declaratory judgment in terms of whether or not they can receive it under default.  But Hunt, they're entitled to $5 million. They just can't collect it probably from Hunt unless he wins a lottery or something like that happens with him. But he, seems to me, has some action here against somebody. You employed. And in your employment, a $5 million judgment is levied against you. I don't see how you keep Wilmington out of this action. Your Honor, Mr. Hunt would have had to have given notice to- Mr. Hunt, was it insured of your client? Well, he was insured under the Cincinnati policy, yes. He was insured under that policy. Yes. Absolutely. And he's got a $5 million judgment. Yes, Your Honor. And you're saying you can't be charged with paying for that judgment because he didn't give you or Wilmington didn't give you proper notice of a claim and a lawsuit that your client already knew about. No, Your Honor. They knew about the accident. You've told us that. They did know about the accident. They knew about the accident. And if you've got an accident where a 19-year-old young man is killed on a highway in South Carolina as a passenger, you know very well there's going to be a big lawsuit. Your Honor, I must disagree there. I didn't come over on the pickle boat. I'm not accusing you of that, Your Honor. But again, the accident report is in the record. If someone runs a stop sign and pulls in front of a truck, an insurer is not on notice that they're going to be sued. Well, you're talking about the merits of the lawsuit, which you didn't defend. Can I ask you about the briefing in this case? Certainly. Did the appellants question the substance of the summary judgment ruling? I don't see anywhere in their brief where they argued that you were on notice and therefore the substance of the summary judgment ruling was wrong. Thank you, Judge Rushing. They did not. They did not file anything in opposition. So there's nothing about notice and when you knew it. There's no dispute about that on appeal. Is that right? That is correct. And may I add, the trial court judge has very strict rules, which I have come to understand and appreciate for summary judgment motions where the parties have to confer on facts, file a notice of agreement. You're talking about the trial court. In this case. The federal court. Yes. Not the wrongful death case. Yes. Yeah. It has very strict rules. There was no opposition to any fact asserted. There was no argument in any form in opposition to the motion for summary judgment. And I would argue that many of the arguments made here are being raised for the first time. There was a motion for to file an amended complaint. Correct. Motion for and to stay the proceedings. Correct. Because of the pending wrongful death case in South Carolina. So I will quibble with you a bit, Your Honor. There was a motion to stay the proceedings. They had already filed a writ of execution on the wrongful death case. So it would be hard to argue it's pending if you've moved to execute on the judgment, Your Honor. Well, they're trying to collect.  I mean, all right. So my point being, they're arguing it is final there by filing a writ of execution. Well, you're saying it's not even final now, it's on appeal. Your Honor, I've said all along that a Rule 60 motion means it is final. You can't file a Rule 60. But there was a motion to amend the complaint. Yes, Your Honor. And to stay, which was denied. That is correct, Your Honor. And that's on appeal here. Yes, Your Honor. And may I address that? I know I've gotten way late and I'm over. May I address that very briefly? Go ahead. Okay. Thank you, Your Honor. The reason the motion to amend was denied, there are two important points to remember. One is the MCS 90 issue, which I think the law is clear on, is that it applies only to the named trucking company. Two is, this is a declaratory judgment action. And the MCS 90 issue was raised as an affirmative defense. So no amendment was necessary. It's already pleaded. They were welcome to conduct discovery. They conducted no discovery in this case. And they cannot now complain. They didn't have an opportunity to do so. There's nothing else, Your Honor. I thank you for your time. Thank you very much, sir. Thank you. Mr. Luck, you're going to finish up here? Yes, Your Honor. Thank you very much. Good to have you with us. So to start with, very good to be back, Your Honor. To answer a question from Judge Rushing right from the beginning here, this is what we're dealing with here at the state court level is a final judgment until it's not a final judgment. Well, tell me where, what is your best case saying that we have to, there's no declaratory judgment action jurisdiction in a federal court over a duty to indemnify unless there's a final judgment that has been upheld on appeal and the motion to vacate has been denied and that's been upheld on appeal and cert's been denied. What's your case for that? When we get to asserting jurisdiction. What's your case for that? So we're talking about asserting jurisdiction in that circumstance, which you, the circumstance you described. That's what this whole appeal is about, believe it or not. Correct. It's about the declaratory judgment action. And entanglement. So what we have here, yes, there is, what's the argument against the district court exercising declaratory judgment jurisdiction over this matter? That's, do I understand that correctly? No, I'm asking what's the legal standard? The very highest one that I can find is Trust Guard, which says that if there's a motion for a DJ while the insured's liability remains undetermined, then maybe the court doesn't have jurisdiction or shouldn't touch it. But here liability has been determined. Correct. Right? Well, it is until it isn't determined. But it's been determined. And that was the question in front of the district court at the time that the DJ action was pursued. And there was a final judgment. The liability was determined. So Trust Guard and the authorities. Yes, Your Honor. OK. The authorities that Trust Guard states, though, show that jurisdiction under these matters, it's not a given at any time. The courts do have the ability. I mean, there are cases that are less stringent than Trust Guard. We have other decisions from this court where we've said, even while the underlying, you know, action is pending, you can't get DJs. So, I mean, it only gets worse for you. I don't know of any authority that goes beyond Trust Guard. But if you know of some, please tell me now. Well, look at Trust Guard and look at the issue of entanglement. You don't know of any? I don't know of any right now in front of you, Your Honor. But look at Trust Guard and look at the issue of entanglement. Because that's where you're comparing this case with Trust Guard. Trust Guard, yes, the underlying action was at an earlier stage. This one's at a later stage. However, in Trust Guard, the issue of entanglement was less prevalent. Here, it is extremely prevalent. We have an issue where we're talking about service of process. This issue of service of process is a thread that runs through both of these cases. This declaratory judgment action doesn't proceed if there is not service of process. I just didn't see service of process as an issue in this case at all. The insurer didn't raise it. It was never, and I know you tried to make it an issue in the federal action, but it seemed totally irrelevant. The insurer didn't raise it below or in the declaratory judgment action? Here, in the declaratory judgment action, service of process on the fella in South Carolina didn't come up. Well, he was in North Carolina. We're talking about Wayne Hunt, correct? Yeah, he lives in North Carolina, but the accident happened in South Carolina. The issue there is, was he served properly with the underlying suit papers? Because that issue, if he is not found, if the service of process is not proper, there is no valid and enforceable judgment at the state court level. Without a valid and enforceable judgment, there is no declaratory judgment action. How are you going to get a judgment at this point with statute of limitations? Interesting question, Your Honor, but this is in the Court of Appeals. They have a lot of flexibility in how they may resolve this. Yes, what's before the Court of Appeals, which I'll be handling that appeal. If you find me one case, I practice love, where the Court of Appeals will say, you did not effectively serve process, but I'm going to give you without prejudice to now go and do it. 10 years after an accident, over 10 years later. What can happen, Your Honor, is the order can be set aside. One case, even close to saying what I just said. There's one in my head right now. I'll have to send it in supplemental briefing, but I'm happy to send it to you. I would love to see it. Because it is not. I've never seen anything like this. It's not on all fours, Your Honor, but what the idea here is, this is an order on appeal, underlying case, in order to. Set aside that judgment. Set aside that judgment. The reason it wasn't properly served, that then says there's nothing that's been told or anything. You then have to file an action now. I don't know how you're going to do that. Even if the Court of Appeals. I don't think it's ever going to happen. You're not. You're also presupposing that just setting aside that order of default. Also, that invalidates service. I know these can be separate creatures. You can make a voluntary appearance. You said it was effective service. It is effective service. But if the Court of. Defective service. Oh, if the Court of Appeals finds service was defective, they can still find. And then the basis you're appealing on, to say it was defective? Of course. So if they find it's defective, you don't have anything. You don't have an action at all. Underlined. Correct. And there's also. So you got to file a new action. Which we can't do. You can? Cannot. Because the statute of limitations is wrong. Well, I said the same thing. I don't get it. So what are you going to get? If they set that judgment aside. Correct. You don't have service. You can't file an action. How in the world are you going to get them to pay you anything if you don't file an action? Let's set aside. Let's separate the two issues of setting aside the judgment and service. These two. No, I won't separate two issues of setting aside the judgment and the new action. Because you say the service is defective. If the service is defective. Yes. Which would be the basis for them to set it aside. Correct. That does not preclude them from finding there was a voluntary appearance before the Court. Excusing service. You see where this is. Well, then that would be a basis for upholding the default judgment then. If he made a voluntary appearance and they said that's effectively saying he's there. So frequently in the past in trial court matters, not necessarily on orders of default, but on entries of default where service was questionable. I have more than once in the trial court seen a trial judge set aside the entry of default. Even though service was questionable, nonetheless, rule that service was proper. So, counsel, proceed with your case. One last question. Yes, Your Honor. The 19-year-old was a passenger in this car? Correct. The driver? Correct. I take it they sued the driver? If I remember correctly, I do believe there was a claim made against the driver of the car. But I do not. You don't know if you ever. This is a state that you're representing now. You have no idea if that state ever recovered anything from that driver. I don't want to speak out of turn, but I have a feeling it's possible. Bear in mind, this is decades old. You heard your counsel on the other side say that it was that driver's insurance that paid for the damage to the Penske truck. Is that correct? That's the first I've heard of that, but it wouldn't surprise me. Who's doing an investigation of these cases that you wouldn't know that answer? It would seem to me, even in where you are, it's more than a point of curiosity. Why don't you know whether or not this state has collected money? You just took the action. Don't look what's done on the line or whether there's an action that's been filed against the driver of the car, whether the driver paid for a Penske truck. Because it seems as though it's all pointed to the liability of this driver, but then there's a settlement with the driver. Potentially, we don't know about that either, but it would seem that all indicates everybody thinks this driver did it, so no one tells the insurance company anything, and it goes on. But you go in and get a default judgment against the driver of it who is not the employer, and it's a default judgment because he didn't show up, and you got a $5 billion judgment. Now, you backdoor in and get liability against the Wilmington people based upon that default judgment. That's the only reason I can see why this was done. It was a backdoor way of how to get liability in the case. You probably could have gotten it by filing the action against the actual person that entered the insurance. You see what I'm saying? I see. I mean, that's the only reason I can see it. You backdoor it into a liability situation and say, well, we just served Hunt. He's the driver, and he didn't show up. He didn't know anything of it. Went and got you a nice judge to give you a default judgment for $5 billion. Nobody knew about it. Now, I'm going to go against this entity. I didn't even tell them I'm filing this because I didn't want to tell them because I'm trying to get a default judgment. I really want a default judgment. I don't want a trial on this because I might have already recovered against the driver of the car because the liability problem is there. In South Carolina, there's a contributory negligence state, right? Comparative. Comparative, yeah. There's only four of them, yeah. Yeah. So, yeah, well, you got that, too. So I... So, Your Honor, I was... But this is not your case you brought. So when I bring those things up, I'm not assessing any of this. I'm only assessing what you know before us now. And what it would seem to me you would know the answer to those questions. Because they're more than interesting. They seem to indicate some basis of why this all happened because you just can't figure out why it happened. Well, the record does reflect some... Does provide some information as to why Wilmington Shipping Company is not part of this. And it's both in the special referee's order and in some of the pleadings throughout the record there. And that is, the use of this leased vehicle obscured their involvement in this. And so, in effect, whoever... When this was originally filed, the employer was unknown and could not be known. The only person...  Did you get the lease contract? Obviously not. Have you looked at it? I have not seen the lease contract. Don't you look at the lease contract? Who he worked for. You're saying they couldn't find out who the owner was? Or who the driver... I think it would be fantastic... Mr. Hunt knew who he worked for. It would be fantastic to ask Mr. Hunt who he worked for. But he went into default. He was served and he chose not to update his records with the North Carolina DMV so that he didn't receive it or he did receive it. I don't know. Either way, he was served under South Carolina law. He was deemed to have received it. He chose not to participate. That truck have written on it, Penske? I wish I had a picture of it, Your Honor. You don't know that either. No, I don't. But if it's got written on it, Penske, you sue the driver of a Penske truck and you know that that truck is leased. Penske is a leasing company. And nobody went to Penske and say, okay... Because he could have gotten insurance with Penske. I mean, Penske, you can buy insurance policy. So either his insurance took... Well, let me ask you this. Does he have insurance? Apparently, he did not, Your Honor. He doesn't even have motor vehicle insurance himself. Even if he had... Because if he did, that's another source of income that his insurance would have to pay because he's a driver. Very likely. But if he's driving for business, I don't think they would... But you don't know the answer to that question. I don't know that answer, but I can say with a certain amount of confidence that if this was his personal... If he had a personal drive policy for his automobile, it wouldn't pay because he was driving for his business. But then I would pay. I just want to know, did he have a policy on it? Because if he did, then that insurance company would have some interest in saying, hey, we want Cincinnati in this too. Well, then you see, we can look at... But you don't know the answer. I know what is in the CR 310, which is the track, the collision report that's in the record. You can see that lists what we do know. That was the universe of facts available at the time of filing. So you have to work with what you have. And that was what was filed. That's how it was filed. I see that my time is very much up. Thank you. Your time has pretty much expired. Thank you very much, Mr. Luck. Thanks to all three of you. We're going to come down to Greek Council, and then I'm going to exercise my discretion and take a quick break. This honorable court will take a brief recess.
judges: Robert B. King, James Andrew Wynn, Allison J. Rushing